**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| ROGUE SATELLITE COMICS, KEVIN BENNETT ATKINSON, and CHRISTOPHER PHILLIP REILLY, | § § § § | |
| *Plaintiffs*, | § § | |
| v. | § § § | |
| DREAMWORKS ANIMATION SKG, INC.; DREAMWORKS ANIMATION, LLC; DREAMWORKS, INC.; PARAMOUNT PICTURES CORP.; PACIFIC DATA IMAGES, INC.; RED HOUR FILMS, INC.; CINEMARK USA, INC.; CARMIKE CINEMAS, INC.; HOLLYWOOD THEATERS, INC.; PREMIERE CINEMA CORPORATION; RAVE CINEMAS, LLC; STARPLEX MASTER HOLDINGS, INC.; TOYS "R" US INC.; TOYSRUS.COM, INC.; TOYSRUS.COM, LLC; GAMESTOP CORP.; HASTINGS ENTERTAINMENT, INC.; SLB TOYS USA, INC.; PENGUIN GROUP (USA) INC.; PEARSON PLC, D/B/A THE PENGUIN GROUP; RANDOM HOUSE, INC.; and APE ENTERTAINMENT, LLC. | § § § § § § § § § § § § § § § § § § § § § § § § § | Civil Action No. _____   Jury Trial Demanded |
| *Defendants*. | § § § | |

**ORIGINAL COMPLAINT FOR COPYRIGHT INFRINGEMENT**

COME NOW Plaintiffs Rogue Satellite Comics, Kevin Bennett Atkinson, and Christopher Phillip Reilly, (Plaintiffs Atkinson and Reilly having done and continuing to do business as Plaintiff Rogue Satellite Comics) (collectively, "Plaintiffs") and file this Original Complaint against Defendants DreamWorks Animation SKG, Inc.; DreamWorks Animation,

LLC; DreamWorks, Inc.; Paramount Pictures Corp.; Pacific Data Images, Inc.; Red Hour Films, Inc.; Cinemark USA, Inc.; Carmike Cinemas, Inc.; Hollywood Theaters, Inc.; Premiere Cinema Corporation; Rave Cinemas, LLC; Starplex Master Holdings, Inc.; Toys "R" Us Inc.; ToysRUs.com, Inc.; ToysRUs.com, LLC; Gamestop Corp.; Hastings Entertainment, Inc.; SLB Toys USA, Inc.; Penguin Group (USA) Inc.; Pearson, PLC, d/b/a The Penguin Group; Random House, Inc.; and Ape Entertainment, LLC, and allege as follows:

## I. NATURE OF THE SUIT

1.       This is a claim for copyright infringement of one or more registered copyrighted works arising under the Federal Copyright Act of 1976, as amended, 17 U.S.C.A. §§ 101, *et seq.*

2.       Plaintiffs are the owners of certain copyrights related to a comic character "Kingfish."  This character was copied by Defendants and used as the character "Minion" in the animated motion picture *Megamind* and in related derivative works that include the Minion character.

## II. JURISDICTION AND VENUE

3.       This action arises under the copyright laws of the United States, Title 17 of the United States Code.  The Court's jurisdiction over this action is proper under the above statutes, including 17 U.S.C. § 101, *et seq.*, 28 U.S.C. § 1331 (federal question jurisdiction) and § 1338 (jurisdiction over copyright actions).

4.       Personal jurisdiction exists generally over Defendants pursuant to 28 U.S.C. § 1391 because they have sufficient minimum contacts within the forum as a result of business conducted within the State of Texas and within this District.  Personal jurisdiction also exists specifically over Defendants because of Defendants' conduct in reproducing, adapting, distributing, performing, and displaying, directly and/or indirectly, works of authorship created

and owned by Plaintiffs and/or derivative works based on Plaintiffs' copyrighted works within the State of Texas and within this District.

5.     Venue is proper in this Court under 28 U.S.C. § 1391(b), (c), and (d), as well as 28 U.S.C. § 1400(a), for the reasons set forth above. Venue is proper because the copyrighted materials were physically drawn and created in the Eastern District of Texas. Venue is also proper because Defendants actively marketed the infringing works within this District. Venue is proper because the copyrighted materials are physically located within this District. Each act of Defendants' directly or indirectly infringing conduct in this District gives rise to proper venue.

### III. THE PARTIES

#### Plaintiffs:

6.     Plaintiff **Rogue Satellite Comics** is an assumed name for Plaintiffs **Kevin Bennett Atkinson** and **Christopher Phillip Reilly**. Plaintiffs Atkinson and Reilly have done and continue to do business and create fictional works, including comic books, under the collective name Rogue Satellite Comics. The copyrights that are the subject of this lawsuit were obtained and are currently owned jointly by Kevin Bennett Atkinson, doing business as Rogue Satellite Comics, and Christopher Phillip Reilly, doing business as Rogue Satellite Comics.

7.     Plaintiff **Kevin Bennett Atkinson** is an individual residing at 417 North Ellis Street, New Boston, Texas 75570, within the Eastern District of Texas. Mr. Atkinson is a professional illustrator and comic book author who has built a considerable body of work. Along with Plaintiff Reilly, Mr. Atkinson created and owns the copyrighted works that are the subject of this litigation.

8.     Plaintiff **Christopher Phillip Reilly** is an individual residing at 124 Butler Avenue, Central Falls, Rhode Island 02863. Mr. Reilly is a professional comic book author who

has built a considerable body of work.  Along with Plaintiff Atkinson, Mr. Reilly created and owns the copyrighted works that are the subject of this litigation.

### Movie Defendants:

9.     Defendant **DreamWorks Animation SKG, Inc.**, is a corporation organized and existing under the laws of the State of Delaware that maintains and/or has maintained its principal place of business at 1000 Flower Street, Glendale, California 91201, and may be served at this address.

10.     Defendant **DreamWorks Animation, LLC**, is a limited liability company organized and existing under the laws of the State of Delaware that maintains and/or has maintained its principal place of business at 1000 Flower Street, Glendale, California 91201.  It may be served via its registered agent, CT Corporation System, 350 North Saint Paul Street, Suite 2900, Dallas, Texas 75201-4234.

11.     Defendant **DreamWorks, Inc.**, is a corporation organized and existing under the laws of the State of Delaware that maintains and/or has maintained its principal place of business at 1000 Flower Street, Glendale, California 91201, and may be served at this address.

12.     Defendants DreamWorks Animation SKG, Inc., DreamWorks Animation, LLC, and DreamWorks, Inc., are hereinafter collectively referred to as the **DreamWorks Defendants**.

13.     Defendant **Paramount Pictures Corp.** ("Paramount") is a corporation organized and existing under the laws of the State of Delaware that maintains and/or has maintained its principal place of business at 5555 Melrose Avenue, Hollywood, California 90038.  It may be served via its registered agent, The Prentice-Hall Corporation System, Inc., 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.  Paramount owns, controls, and/or has equity interest in the DreamWorks Defendants.

14.     Defendant **Pacific Data Images, Inc.**, ("PDI") is a corporation organized and existing under the laws of the State of California that maintains and/or has maintained its principal place of business at 1000 Flower Street, Glendale, California 91201, and may be served at this address.

15.     Defendant **Red Hour Films, Inc.**, ("RHF") is a corporation organized and existing under the laws of the State of California that maintains and/or has maintained its principal place of business at 132 South Rodeo Drive, Beverly Hills, California 90212, and may be served at this address.

16.     The DreamWorks Defendants, Paramount, PDI, and RHF are hereinafter collectively referred to as the **Movie Defendants**.

### Theater Defendants:

17.     Defendant **Cinemark USA, Inc.**, ("Cinemark") is a corporation organized and existing under the laws of the State of Texas that maintains and/or has maintained its principal place of business at 3900 Dallas Parkway, Suite 500, Plano, Texas 75093-7871.  It may be served via its registered agent, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

18.     Defendant **Carmike Cinemas, Inc.** ("Carmike") is a corporation organized and existing under the laws of the State of Delaware that maintains and/or has maintained its principal place of business at P.O. Box 391, Columbus, Georgia 31902-0391.  It may be served via its registered agent, CT Corporation System, 350 North Saint Paul Street, Dallas, Texas 75201-4240.

19.     Defendant **Hollywood Theaters, Inc.** ("Hollywood Theaters") is a corporation organized and existing under the laws of the State of Delaware that maintains and/or has

maintained its principal place of business at 2911 Turtle Creek Boulevard, Suite 1150, Dallas, Texas 75219-6247, and may be served at this address.

20.     Defendant **Premiere Cinema Corporation** ("Premiere") is a corporation organized and existing under the laws of the State of Texas that maintains and/or has maintained its principal place of business at 109 West 4th Street, Big Spring, Texas 79720-2514.  It may be served via its registered agent, Gary Moore, at this same address.

21.     Defendant **Rave Cinemas, LLC** ("Rave") is a limited liability company organized and existing under the laws of the State of Delaware that maintains and/or has maintained its principal place of business at 3333 Welborn Street, Suite 100, Dallas, Texas 75219-5153.  It may be served via its registered agent, Corporation Service Company d/b/a CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

22.     Defendant **Starplex Master Holdings, Inc.** ("Starplex") is a corporation organized and existing under the laws of the State of Texas that maintains and/or has maintained its principal place of business at 12400 Coit Road, Suite 800, Dallas, Texas 75251-2067.  It may be served via its registered agent, Steve Holmes, at this same address.

23.     Defendants Cinemark, Carmike, Hollywood Theaters, Premiere, Rave, and Starplex are hereinafter collectively referred to as the **Theater Defendants**.

**Retail Defendants:**

24.     Defendant **Toys "R" Us Inc.** is a corporation organized and existing under the laws of the State of Delaware that maintains and/or has maintained its principal place of business at One Geoffrey Way, Wayne, New Jersey 07470-2035.  It may be served via its registered

agent, Corporation Service Company, d/b/a CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

25.     Defendant **ToysRUs.com, Inc.**, is a corporation organized and existing under the laws of the State of Delaware that maintains and/or has maintained its principal place of business at One Geoffrey Way, Wayne, New Jersey 07470-2035, and may be served at this address.

26.     Defendant **ToysRUs.com, LLC**, is a limited liability company organized and existing under the laws of the State of Delaware that maintains and/or has maintained its principal place of business at One Geoffrey Way, Wayne, New Jersey 07470-2035, and may be served at this address.

27.     Defendants Toys "R" Us Inc., ToysRUs.com, Inc., and ToysRUs.com, LLC, are hereinafter collectively referred to as **Toys R Us**.

28.     Defendant **Gamestop Corp.** ("Gamestop") is a corporation organized and existing under the laws of the State of Delaware that maintains and/or has maintained its principal place of business at 625 Westport Parkway, Grapevine, Texas 76051-6740.  It may be served via its registered agent, CT Corporation System, 350 North Saint Paul Street, Suite 2900, Dallas, Texas 75201-4234.

29.     Defendant **Hastings Entertainment, Inc.** ("Hastings") is a corporation organized and existing under the laws of the State of Texas that maintains and/or has maintained its principal place of business at 3601 Plains Blvd., Amarillo, Texas 79102-1004.  It may be served via its registered agent, CT Corporation System, 350 North Saint Paul Street, Suite 2900, Dallas, Texas 75201-4234.

30.     Defendants Toys R Us, Gamestop, and Hastings are hereinafter collectively referred to as the **Retail Defendants**.

**Toy Manufacturer Defendants:**

31.     Defendant **SLB Toys USA, Inc.** ("SLB Toys" and/or "Toy Manufacturer Defendant") is a corporation organized and existing under the laws of the State of New York that maintains and/or has maintained its principal place of business at 2228 Barry Avenue, Los Angeles, California 90064, and may be served at this address.

**Publisher Defendants:**

32.     Defendant **Penguin Group (USA) Inc.** is a corporation organized and existing under the laws of the State of Delaware that maintains and/or has maintained its principal place of business at 375 Hudson Street, New York, New York 10036, and may be served at this address.

33.     Defendant **Pearson PLC** is a global publishing company with significant operations in the United States, organized and existing under the laws of England and Wales, and that has and continues to do business as **The Penguin Group**.  It maintains and/or has maintained its principal place of business at 80 Strand, London, England WC2R 0RL.  The United Kingdom of Great Britain and Northern Ireland is a signatory nation to the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters ("Hague Service Convention").  Defendant may be served with citation in this action in accordance with the Hague Convention.

34.     Defendants Penguin Group (USA) Inc. and Pearson PLC, d/b/a The Penguin Group are hereinafter collectively referred to as **Penguin**.

35.     Defendant **Random House, Inc.**, ("Random House") is a corporation organized and existing under the laws of the State of New York that maintains and/or has maintained its principal place of business at 1745 Broadway, New York, New York 10019.  It may be served

via its registered agent, Corporation Service Company, d/b/a CSC – Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

36.     Defendant **Ape Entertainment, LLC**, ("Ape Entertainment") is a corporation organized and existing under the laws of the State of California that maintains and/or has maintained its principal place of business at 620 Hansen Way, Palo Alto, California 94304, and may be served at this address.

37.     Defendants Penguin, Random House, and Ape Entertainment, are hereinafter collectively referred to as the **Publisher Defendants**.

## IV. FACTS COMMON TO ALL CLAIMS FOR RELIEF

### Plaintiffs' Ownership of Copyrighted Works

38.     This cause of action asserts infringement of copyrights owned by and registered to Plaintiffs Atkinson and Reilly, doing business as Rogue Satellite Comics.

39.     In 1994, Plaintiffs began creating a series of fictional comic books under the name Rogue Satellite Comics.  The first issue, Rogue Satellite Comics #1, was first published and distributed in or around August of 1996.

40.     The copyright for Rogue Satellite Comics #1 is registered to Plaintiffs Atkinson and Reilly, doing business as Rogue Satellite Comics.  It bears a copyright registration number of VA 1-756-782.  A true and correct copy of the Certificate of Registration for Rogue Satellite Comics #1 is attached as Exhibit A.

41.     In 1996, Plaintiffs created Rogue Satellite Comics #2, which was first published and distributed in or around November of 1996.

42.     The copyright for Rogue Satellite Comics #2 is registered to Plaintiffs Atkinson and Reilly, doing business as Rogue Satellite Comics.  It bears a copyright registration number

of VA 1-756-787.  A true and correct copy of the Certificate of Registration for Rogue Satellite Comics #2 is attached as Exhibit B.

43.      In 1996, Plaintiffs created Rogue Satellite Comics #3, which was first published and distributed in or around March of 1997.

44.      The copyright for Rogue Satellite Comics #3 is registered to Plaintiffs Atkinson and Reilly, doing business as Rogue Satellite Comics.  It bears a copyright registration number of VA 1-756-789.  A true and correct copy of the Certificate of Registration for Rogue Satellite Comics #3 is attached as Exhibit C.

45.      In 1997, Plaintiffs created Rogue Satellite Comics #4, also known as the "Special Issue."  It was first published and distributed in or around July of 1997.

46.      The copyright for Rogue Satellite Comics #4 (Special Issue) is registered to Plaintiffs Atkinson and Reilly, doing business as Rogue Satellite Comics.  It bears a copyright registration number of VA 1-756-792.  A true and correct copy of the Certificate of Registration for Rogue Satellite Comics #4 (Special Issue) is attached as Exhibit D.

47.      In 1998, Plaintiffs created Rogue Satellite Comics #5.  It was first published and distributed in or around 2006 as part of Rogue Satellite Comics: Crossroads to Lambada.

48.      In or around 1999, Plaintiffs created Rogue Satellite Comics #6.  It was first published and distributed in or around 2006 as part of Rogue Satellite Comics: Crossroads to Lambada.

49.      Rogue Satellite Comics: Crossroads to Lambada is a compilation that includes Rogue Satellite Comics #1, Rogue Satellite Comics #2, Rogue Satellite Comics #3, Rogue Satellite Comics #4 (Special Issue), Rogue Satellite Comics #5, and Rogue Satellite Comics #6.  It was first published and distributed in or around 2006.

50.     The copyright for Rogue Satellite Comics: Crossroads to Lambada is registered to Plaintiffs Atkinson and Reilly, doing business as Rogue Satellite Comics.  It bears a copyright registration number of VA 1-762-835.  A true and correct copy of the Certificate of Registration for Rogue Satellite Comics: Crossroads to Lambada is attached as Exhibit E.

51.     In 2009, Plaintiffs created Rogue Satellite Comics: Acme City. It was first published and distributed in or around 2009 as part of Rogue Satellite Comics: The Complete Collection.

52.     Rogue Satellite Comics: The Complete Collection is a compilation that includes Rogue Satellite Comics #1, Rogue Satellite Comics #2, Rogue Satellite Comics #3, Rogue Satellite Comics #4 (Special Issue), Rogue Satellite Comics #5, Rogue Satellite Comics #6, and Rogue Satellite Comics: Acme City.  It was first published and distributed in or around 2009.

53.     The copyright for Rogue Satellite Comics: The Complete Collection is registered to Plaintiffs Atkinson and Reilly, doing business as Rogue Satellite Comics. It bears a copyright registration number of VA 1-762-836.  A true and correct copy of the Certificate of Registration for Rogue Satellite Comics: The Complete Collection is attached as Exhibit F.

54.     The registered works that are at issue in this suit are Rogue Satellite Comics #2, Rogue Satellite Comics #3, Rogue Satellite Comics #4 (Special Issue), Rogue Satellite Comics: Crossroads to Lambada, and Rogue Satellite Comics: The Complete Collection.

55.     In 1996, Plaintiffs created the character Kingfish, who appears in each of the copyrighted works that are at issue in this suit.  The Kingfish character was first published and distributed in or around November of 1996 as a character in Rogue Satellite Comics #2.

56.     Kingfish is a character in the Rogue Satellite Comics books, and is largely characterized by his unusual physical appearance.

57.     Kingfish is unique in that the conscious part of the character is a fish.  The fish controls a robot.  The character is such that the robot forms the body of the character.  The head of the character is a fish bowl with the conscious fish residing there.  The character's body is a large, muscular robot with metal components on his torso and limbs.  The character's words are spoken by the fish that swims inside the tank.  The fish is a sharp-toothed fish with distinctively visible teeth.  The fish in the Kingfish character is not physically connected to anything inside the tank or to any part of the robotic body of the character.  The words of the character come through a speaker at the base of the fish bowl head.

58.     An image of Kingfish from Plaintiffs' copyrighted works appears below:



**Kingfish, 1996**

59.     The character Kingfish appears in each of the copyrighted works that are at issue in this lawsuit.

60.     The character and physical appearance of Kingfish are copyrightable works under Title 17 of the United States Code.  All copyrights to the character and physical appearance of Kingfish are owned by Plaintiffs.

**Access to Plaintiffs' Copyrighted Works**

61.     At all times from the date of first publication of the Kingfish character, Plaintiffs' copyrighted works—including the Kingfish character—have been accessible to members of the public, including each Defendant.

62.     Rogue Satellite Comics #2 was first published and publicly distributed in or around November of 1996.  The inside front cover of Rogue Satellite Comics #2 states in part, "Rogue Satellite is TM & © 1996 Chris Reilly & Kevin Atkinson."

63.     Rogue Satellite Comics #3 was first published and publicly distributed in or around March of 1997.  The inside front cover of Rogue Satellite Comics #3 states in part, "Rogue Satellite is TM & © 1997 Chris Reilly & Kevin Atkinson."  The character Kingfish appears on the cover of Rogue Satellite Comics #3.

64.     Rogue Satellite Comics #4 (Special Issue) was first published and publicly distributed in or around July of 1997.  The inside front cover of Rogue Satellite Comics #4 (Special Issue) states in part, "Storytellers: Christopher P. Reilly & Kevin Atkinson[.]   All characters TM and copyrighted Reilly & Atkinson.  Oz characters created by L. Frank Baum. Oz Squad TM and copyrighted by Steven Alquist. Flaming Carrot TM and copyrighted by Bob Burden."

65.     Rogue Satellite Comics: Acme City was first published and publicly distributed in or around 2009 as part of Rogue Satellite Comics:  The Complete Collection.  The inside page facing the table of contents of Rogue Satellite Comics:  The Complete Collection states in part, "Trademark and copyright © 1996–2009 by Chris Reilly and Kevin Atkinson . . . Flaming Carror [sic] is trademarked by Bob Burden and used with permission[.]  Oz Squad is trademarked by Steve Ahlquist and used with permission . . . All rights reserved."

66.     Rogue Satellite Comics #2 and #3 were published by Slave Labor Graphics ("SLG").  SLG is a popular comic book publisher founded in 1986 in San Jose, California, by Dan Vado.  SLG's Wikipedia page lists approximately 130 popular comic book titles that have been published by SLG.  Among those listed is "Rogue Satellite Comics #1–3 (Reilly & Atkinson, 1996–1997)."

67.     Rogue Satellite Comics #4 (Special Issue) was published by Modern Comics.

68.     Rogue Satellite Comics:  Crossroads to Lambada was published by Patchwork Press.

69.     Rogue Satellite Comics:  The Complete Collection was published by TumbleTap.

70.     During 1996, Chris Reilly sent copies of Rogue Satellite Comics #1 and #2 to Kitchen Sink Publishing where it was shared with the staff.  Rogue Satellite Comics #2 contains the copyrighted character Kingfish.  Kitchen Sink is a well-known publisher of comics.  The distribution of the copyrighted materials to Kitchen Sink Publishing increased awareness of and access to the Kingfish character.

71.     The character "Flaming Carrot" appeared in Rogue Satellite Comics #4 (Special Issue) with permission from his creator, Bob Burden.  Flaming Carrot was subsequently reprinted in Rogue Satellite Comics: Crossroads to Lambada and Rogue Satellite Comics: The Complete Collection.  Burden is a well-known author.  He has received an Eisner award.  The character Flaming Carrot was part of a group called the Mystery Men.  Burden's *Mystery Men* was the subject of a 1999 film adaptation, directed by Kinka Usher and starring Ben Stiller and Geoffrey Rush.  The "Flaming Carrot" character is a well-known comic character and his appearance in this Rogue Satellite Book increased awareness of and access to the copyrighted publication and to the Kingfish character.

72.     Chris Reilly has regularly attended the San Diego Comic-Con.   In 2009, Mr. Reilly attended and distributed a large volume of the copyrighted materials containing the character Kingfish.   This distribution increased awareness of and access to the Kingfish character.

73.     Kevin Atkinson sent copies of Rogue Satellite Comics #4 (Special Issue) to many comic book publishers and other organizations throughout the late 1990s and early 2000s. Among the entities to whom Mr. Atkinson sent Rogue Satellite Comics #4 (Special Issue) were Warner Brothers and Disney.  This distribution of the copyrighted works increased awareness of and access to the Kingfish character.

74.     Will Eisner reviewed Rogue Satellite Comics:  The Complete Collection.  A quote from Mr. Eisner appears on the back cover.  Mr. Eisner is a pioneer in the comic book world and the namesake of the Will Eisner Comic Industry Awards.  He was also an inaugural inductee to the Will Eisner Comic Book Hall of Fame, along with Carl Barks and Jack Kirby. Mr. Eisner's recognition of Rogue Satellite Comics increased awareness of and access to the Kingfish character.

75.     In 2004, Chris Reilly submitted his work *Hector Mortem's Castle Freak* to the Small Press Expo, resulting in a nomination for the Outstanding Debut Award at the Ignatz Awards.  Mr. Reilly's nomination for an Ignatz Award increased recognition of him and of his works, including the Rogue Satellite Comics works, and increased awareness of and access to the Kingfish character.

76.     In 2005, Chris Reilly submitted his work with Steve Ahlquist and Ben Towle on *Merde* to the Small Press Expo, resulting in a nomination for the Outstanding Debut Award at the Ignatz Awards.   Mr. Reilly's nomination for an Ignatz Award increased recognition of him

and of his works, including the Rogue Satellite Comics works, and increased awareness of and access to the Kingfish character.

77.     In 2005, Chris Reilly was nominated for four Harvey Awards: (1) Best New Talent; (2) Best Writer; (3) Best Single Issue or Story; and (4) Special Award for Humor in Comics – all for his work *Puphedz* (Brillig Productions).  Mr. Reilly's nominations at the 2005 Harvey Awards increased recognition of him and of his works, including the Rogue Satellite Comics works, and thus increased awareness of and access to the Kingfish character.

78.     In 2006, Chris Reilly submitted *Rogue Satellite Comics: Crossroads to Lambada* to the Small Press Expo, resulting in a nomination for the Outstanding Debut Comic Award at the Ignatz Awards.  This recognition of the Rogue Satellite Comics stories increased awareness of and access to the Kingfish character.

79.     In 2007, Chris Reilly submitted his work *Igor: Fixed by Frankensteins* to the Small Press Expo, resulting in a nomination for the Outstanding Debut Award at the Ignatz Awards.  Mr. Reilly's nomination for an Ignatz Award increased recognition of him and of his works, including the Rogue Satellite Comics works, and increased awareness of and access to the Kingfish character.

80.     In 2007, Chris Reilly was named a judge of the Eisner Awards.  Mr. Reilly's association with the Eisner Awards and his role as a judge increased recognition of him and of his works, including the Rogue Satellite Comics works, and thus increased awareness of and access to the Kingfish character.

81.     In January 2009 Kevin Atkinson posted photos of the character Kingfish on his Facebook page.  Significantly, at that time and continuing through present, Kevin Atkinson has not restricted access to content on his page via Facebook's privacy settings.  Instead, he has kept

his page or account totally open and available for anyone to see.  Thus, any person using the internet can access content on Kevin Atkinson's Facebook page—including pictures of Kingfish—not just Mr. Atkinson's Facebook "friends" and/or other Facebook users.

82.     Kevin Atkinson has Facebook connections with several individuals who worked to develop the Minion character.

83.     Kory Heinzen worked on *Megamind* as a visual development artist.  Specifically, he had responsibilities for the design and development of the Minion character.  As of 2010, Kory Heinzen shared 23 Facebook friends with Kingfish creator Kevin Atkinson.  One of Kory Heinzen's Facebook friends posted comments on Facebook about Kevin Atkinson's drawings.  Kory Heinzen had access and exposure to the Kingfish character through these connections.

84.     Kory Heinzen created drawings as part of the development of the Minion character.  These drawings use the same fish tank head design as Kingfish, the same design for the hoses connected to the tank, the same design for the bezel at the bottom on the fish tank, and the same design for the speaker on the bezel of the fish tank head.

85.     Andy Bialk also worked for DreamWorks in developing the character Minion.  Specifically, Andy Bialk had responsibilities for the design and development of the Minion character.  His official credit is that of "character designer."  As of 2010, Andy Bialk shared 23 Facebook friends with Kingfish creator Kevin Atkinson.  Andy Bialk had access and exposure to the Kingfish character through these connections.

86.     Chris Reccardi also worked for DreamWorks in developing the character Minion.  Specifically, Chris Reccardi had responsibilities for the design and development of the Minion character.  His official title was that of "character designer."  As of 2010, Chris Reccardi shared

17 Facebook friends with Kingfish creator Kevin Atkinson.   Chris Reccardi had access and exposure to the Kingfish character through these Facebook connections.

87.    Kevin Atkinson worked on a project for Platinum Studios.  Atkinson worked on this project with Andrew Foley.  The project was called "Jest Cause."

88.    Andrew Foley was aware of the character "Kingfish" through his work with Atkinson.  Additionally, Andrew Foley was a Facebook friend with Atkinson and thus would have access to photos of Kingfish on Atkinson's Facebook page.

89.    Foley went on to write *Cowboys and Aliens*, which is a movie currently under production by the DreamWorks Defendants.

90.    The Movie Defendants had access and exposure to the Kingfish character through these connections with Andrew Foley.

91.    All Defendants had access to Plaintiffs' copyrighted works at least through the connections, resources, and other facts listed above.

92.    The Theater Defendants had further access to Plaintiffs' copyrighted works through their business and contractual relationships with the Movie Defendants.

93.    The Retailer Defendants had further access to Plaintiffs' copyrighted works through their business and contractual relationships with the Movie Defendants.

94.    The Toy Manufacturer Defendants had further access to Plaintiffs' copyrighted works through their business and contractual relationships with the Movie Defendants.

95.    The Publisher Defendants had further access to Plaintiffs' copyrighted works through their business and contractual relationships with the Movie Defendants.

**Defendants' Infringing Works**

96.     Defendants infringed Plaintiffs' copyrights by producing and distributing the motion picture *Megamind* and associated materials, including books, toys, DVDs, and video games, which included the character "Minion."

97.     Defendants also infringed Plaintiffs' copyrights by producing and distributing derivative products, projects, and other works, including toys, DVDs, video games, books, etc.

98.     The first draft of *Megamind* was written in approximately 2003.  The movie was originally planned as a live action movie entitled *Master Mind*.

99.     The character Minion did not appear in the original screenplay for *Master Mind*. Instead, the lead villain (who is actually the protagonist in the story) had three sidekicks who, according to the screenplay, looked like Albert Einstein, Leonardo da Vinci, and Plato.

100.    At some point, the *Master Mind* script was put aside.  The project was revisited sometime in 2006 or 2007 according to the *Megamind* DVD Commentary, and it was decided that it would be reworked as an animated feature film.  The production team decided to eliminate the three sidekicks and create a single character to fill the role.

101.    Without an original idea for the physical appearance of the character, the creators of *Megamind* turned to pre-existing sources.  An early design for the Minion character was directly based on the prior work of others.

102.    Andy Bialk admits to copying the works of other artists in an effort to develop the Minion character.  First, he states in his blog that, "It's pretty clear that I referenced Jack Kirby on some of my designs . . . seemed to be the right direction for the film in the early stages."  *See* http://andybialk.blogspot.com/ (posting from November 5, 2010).  In copying Jack Kirby, Bialk first designed Minion, "like Jack Kirby's character Metron, floating in a superpowered chair."

*See* RICHARD VON BUSACK, THE ART OF MEGAMIND: BAD. BRILLIANT. BLUE. at 45 (Insight Editions 2010). Another copied design "modeled him on the encapsulated cyborg Modok, a Kirby villain." *Id.*

103.    Shown below (left) is one of Bialk's early Minion designs. Bialk admits that this design was copied from a Jack Kirby character, Modok (right).

    

**Early Minion Design**                  **Modok, Jack Kirby**

104.    Character designers working on *Megamind* resorted to copying the works of others in the development process. This includes characters other than just Minion. Shown below (left) is an early design for the character Megamind that Bialk copied from the character Galactus. Also shown (right) is the original Galactus character design from which it was copied. Galactus was a character created by Jack Kirby and Stan Lee.





**Early Megamind Design**          **Galactus, Jack Kirby & Stan Lee**

105.    Ultimately, the early design for Minion based on Jack Kirby's character was abandoned, and the character's physical features were copied from Plaintiffs' copyrighted character Kingfish.

106.    During the filmmaker's commentary, when discussing the origins of the Minion character, the following dialogue takes place between Director Tom McGrath, Producers Lara Breay and Denise Nolan Cascino, and Writers Alan Schoolcraft and Brent Simons:

> *DIRECTOR TOM MCGRATH:* You know, it's great—again, David Cross is such a charming gorilla-fish-piranha head. He was fantastic. Originally, in the original script, there was [sic] three guys. There was Galileo, Plato, and someone else, right?
> *OTHERS:* And Van Gogh.
> *MCGRATH:* His henchmen. Which would be three voices and three different characters. So it was great to find that voice in one character—Minion—and just being an animated movie, we—I remember [Producer] Lara [Breay] was flipping through some old designs of different villains, I think, and—and had found the gorilla fish head.
> *OTHERS:* Right.

*MCGRATH:* And we both agreed it would be fun for animation—and fun for 3D, too. And it just kind of worked into Minion being his—being given to him on his home planet to take care of him, you know.

107.    The producers mistakenly said that the sidekicks were Galileo, Plato, and Van Gogh.  In fact, according to the early screenplay, the sidekicks were Einstein, da Vinci, and Plato.

108.    An image of the Minion character as he appears in the film *Megamind* appears below:



**Minion, 2010**

109.    The conscious part of the Minion character is a fish.

110.    The fish in the Minion character controls a robot.

111.    The Minion character is such that the robot forms the body of the character.

112.    The head of the Minion character is a fish bowl with the conscious fish residing there.

113.   The Minion character's body is a large, muscular robot with metal components on his torso and limbs.

114.   Minion's words are spoken by the fish that swims inside the fish tank.

115.   The fish is a sharp-toothed fish with distinctively visible teeth.

116.   The fish in the Minion character is not physically connected to anything inside the tank or to any part of the robotic body of the character.

117.   Minion's words come through a speaker at the base of the fish bowl head.

118.   Minion is one of the primary characters in *Megamind*.

119.   Minion also appears on the majority of the movie posters, the DVD cover, and is the only character who appears on the DVD special features menu screen.

120.   The character is an integral part of the movie and was instrumental to the movie's success.

121.   *Megamind* was released in the United States on November 5, 2010.  During its opening weekend, it played on approximately 3,944 screens and grossed over $46 million.  As of February 24, 2011 *Megamind* has grossed $148,415,853 in the U.S. and Canada, as well as $173,078,595 overseas giving the film a worldwide total of $321,494,448.

122.   On February 25, 2011, *Megamind* was released on DVD.  As of the filing of this Complaint, the movie has grossed over $42,868,171 in DVD sales.  To date, an estimated 3.4 million copies of the DVD have been sold in the United States.

123.   The Movie Defendants created the film *Megamind*, which includes the Minion character that infringes Plaintiffs' copyrights.

124.   The Theater Defendants publicly displayed *Megamind*, including the Minion character that infringes Plaintiffs' copyrights.

125.    Due to the success of the movie, other products have been sold for profit using the Minion character that infringe Plaintiffs' copyrights.

126.    Retailer Defendants have sold DVDs, video games, books, and toys figurines with the Minion character that infringe Plaintiffs' copyrights.

127.    Toy Manufacturer Defendants have manufactured and sold toy figures of Minion that infringe Plaintiffs' copyrights.

128.    Publisher Defendants have published novels, comics, and other books that include the Minion character that infringe Plaintiffs' copyrights.

129.    The United States Copyright Office website catalog reports several copyright claims over various works related to *Megamind*.  The earliest date of creation listed for any such work is April 27, 2009.  A sample of copyrighted works follows.  It is not intended to be an exhaustive list of infringing works.

130.    DreamWorks Animation LLC pre-registered for copyright protection on the motion picture *Megamind* on January 25, 2010.  The pre-registration number is PRE000003041. It states that creation of the work began April 27, 2009.

131.    DreamWorks Animation LLC and Tom McGrath obtained copyright registration on the motion picture *Megamind* on November 5, 2010.   The registration number is PA0001712379.  It states that creation of the work began in 2010.

132.    DreamWorks Animation LLC and Penguin Group (USA) Inc. obtained copyright registration for "Megamind Mad Libs" on November 19, 2010.   The registration number is TX0007288643.  It states that creation of the work began in 2010.

133.    DreamWorks Animation LLC and Penguin Group (USA) Inc. obtained copyright registration for "Megamind: Make Your Own Comic Sticker Book" on November 19, 2010.  The

registration number is TX0007293289.  It states that creation of the work began in 2010.  The registration lists pre-existing material as "characters from the animated film MEGAMIND; art taken from the film."

134.    DreamWorks Animation LLC and Penguin Group (USA) Inc. obtained copyright registration for "Megamind: The Novel" on November 19, 2010.  The registration number is TX0007291312.  It states that creation of the work began in 2010.  The registration lists pre-existing material as "the animated film MEGAMIND."

135.    DreamWorks Animation LLC and Penguin Group (USA) Inc. obtained copyright registration for "Megamind: Victory at Last" on November 19, 2010.  The registration number is TX0007291296.  It states that creation of the work began in 2010.  The registration lists pre-existing material as "the animated film MEGAMIND."

136.    DreamWorks Animation LLC and Penguin Group (USA) Inc. obtained copyright registration for "I Am Megamind" on November 19, 2010.  The registration number is TX0007291318.  It states that creation of the work began in 2010.  The registration lists pre-existing material as "the characters of the animated film MEGAMIND."

137.    DreamWorks Animation LLC obtained copyright registration for "DreamWorks Megamind: Bad. Blue. Brilliant" on June 15, 2010.  The registration number is TXu001662681. It states that creation of the work began in 2010.

**Substantial Similarity Between Plaintiffs' and Defendants' Works**

138.    Defendants' character Minion is substantially similar to Plaintiffs' character Kingfish.

139.    The Kingfish character has a fish as the conscious living part of the character. The Minion character also has a fish as the conscious living part of the character.

140.    The Kingfish character has the fish controlling a robot.  The Minion character also has the fish controlling a robot.

141.    The Kingfish character uses a humanoid robot for the character's body.   The Minion character also uses a humanoid robot for the character's body.

 

**Minion**                                    **Kingfish**

142.    The Kingfish character includes a robot with a muscular shape.   The Minion character also includes a robot with a muscular shape.

143.    The Kingfish character's robot is barrel-chested.  The Minion character's robot is also barrel-chested.

144.    The Kingfish character has metal has plating on its torso.  The Minion character also has metal plating on its torso.

145.   The Kingfish character has particularly shaped metal shoulder plates.  The Minion character also uses these same particularly shaped metal shoulder plates.

146.   The Kingfish character has a fish living in a particularly shaped fish bowl.  The Minion character also has a fish living in the same particularly shaped fish bowl.

 

**Minion**                                                      **Kingfish**

147.   The Kingfish character has the fish unconnected to anything and freely swimming in the fish bowl.  The Minion character also has the fish unconnected to anything and freely swimming in the fish bowl.

148.   The similarity in the shape and design of the fish bowls is not limited to a single perspective, but rather extends throughout the three-dimensional space.





**Minion**                                            **Kingfish**

149.    The Kingfish character uses the fish bowl to form the head of the character.  The Minion character also uses the fish bowl to form the head of the character.

150.    The Kingfish character uses the fish in the fish bowl to make the facial expressions of the character.  The Minion character also uses the fish in the fish bowl to make the facial expressions of the character.

151.    The Kingfish character has a fish with particularly shaped fins.  The Minion character also has a fish with the same particularly shaped fins.

152.    The Kingfish character includes a fish with sharp jagged teeth that are visible. The Minion character also includes a fish with sharp jagged teeth that are visible.




**Minion**                                        **Kingfish**

153.    The Kingfish character includes a fish that is a certain size in relation to the size

of the fish bowl.  The Minion character also includes a fish that is the same size in relation to the

size of the fish bowl.

154.    The Kingfish character has hoses attached to the circular hose attachments on the

side of the fish bowl.   An early drawing of Minion also featured the "hoses" attached to the fish

bowl, including the segmented design of the hoses.  The final version of Minion did not include

the hoses.




**Minion Development Drawing**                    **Kingfish**

155.    The Kingfish character has the fish bowl attached to the robot with a bezel that resembles the bezel of an underwater diving helmet.  The Minion character also has the fish bowl attached to the robot with a bezel that resembles the bezel of an underwater diving helmet.

156.    The Kingfish character speaks through a speaker attached to the bezel at the bottom of the fish bowl.  The Minion character also speaks through a speaker attached to the bezel at the bottom of the fish bowl.

157.    The Kingfish character has bolts on the bezel at the bottom of the fish bowl.  The Minion character also has bolts on the bezel at the bottom of the fish bowl.

     

**Minion**                          **Kingfish**

158.    The Kingfish character has segmented robotic arms.  The Minion character also has segmented robotic arms.

159.    The Kingfish character has robotic hands that extend from circular cuffs.  The Minion character also has robotic hands that extend from circular cuffs.

160.    The Kingfish character has hands that expose the robotic workings of the hand, but has protected arms where the robotic workings are not seen.  The Minion character also has hands that expose the robotic workings of the hand, but has protected arms where the robotic workings are not seen.

161.    Both Minion and Kingfish have arms and hands with the same proportions.

162.    Both Minion and Kingfish use their arms and hands in the same manner to express themselves.




**Minion**                                              **Kingfish**

163.    Both Kingfish and Minion use guns as weapons.  The Minion drawings copy the views and perspective of the Kingfish drawings.





**Minion**                          **Kingfish**                          **Kingfish**

164.    Both Kingfish and Minion nearly die in identical situations involving the glass fishbowl breaking and water leaking out of the fishbowl.  The Minion drawing copies the same

body position, facial expression, and perspective of Kingfish when faced with the exact same situation.





      **Minion, Movie**            **Minion, Storyboard**            **Kingfish**

165.    Defendants purposefully made minor modifications, immaterial variations, and/or subtle changes to the Kingfish character when developing the Minion character.   These alterations and editing choices provide evidence of copying rather than independent creation.

166.    The substantial similarities between Plaintiffs' copyrighted character Kingfish and Defendants' infringing character Minion exist in all accused infringing works.

## V. CLAIMS FOR RELIEF

167.    Based on the above-described actions and works of Defendants, Plaintiff asserts several causes of action against the Defendants. These causes of action are detailed as follows.

### First Claim for Relief – Copyright Infringement, 17 U.S.C. § 101, *et seq.*
### Against All Defendants

168.    Plaintiffs are the original authors of the copyrighted works that are the subject of this lawsuit.

169.    Plaintiffs have the exclusive right to prepare derivative works based upon the copyrighted works pursuant to 17 U.S.C. § 106(2).

170.    The Defendants' copying, downloading, use, modification, reproduction, display, manufacturing, distribution, and selling of works that included copyrightable elements of

Plaintiffs' protected works of authorship as embodied in the character of Kingfish constitutes a violation of the United States Copyright Act, Title 17 U.S.C. §§ 501(a), 106(1), 106(2), and 106(3), and all Defendants were acting as infringers within the meaning of 17 U.S.C. § 501(a).

171.    By all Defendants' participation in the production, distribution, use, and/or exploitation of the *Megamind* film and/or related derivative works, Defendants knowingly and willfully infringed, authorized others to infringe, and will continue to infringe Plaintiffs' copyright in the Rogue Satellite Comic works and the character of Kingfish.

172.    As a proximate result of Defendants' copyright infringement, Plaintiff has suffered and will continue to suffer irreparable injury, some of which cannot be compensated in money damages if such wrongful conduct continues.

**Second Claim for Relief – Contributory Infringement**
**Against Movie Defendants**

173.    The DreamWorks Defendants, Paramount, PDI, and RHF, individually and in concert with the other named Defendants, encouraged, induced, or materially contributed to, the infringement of Plaintiffs' copyrightable work, and of Plaintiffs' beneficial interest in the Kingfish character, in that they:

(a)    used, distributed, and/or exploited the *Megamind* film;

(b)    produced, filmed, distributed, and edited the *Megamind* film;

(c)    distributed, promoted, and advertised the *Megamind* film and provided financing for the *Megamind* film;

(d)    have further participated in the international distribution of the *Megamind* film pursuant to license agreements and/or distribution servicing agreements and/or third party service agreements; and

(e) have further participated in the creation of infringing derivative works by at least the other named Defendants pursuant to license agreements and/or other agreements.

174. The DreamWorks Defendants', Paramount's, PDI's, and RHF's actions were performed with actual and constructive knowledge of Plaintiffs' rights and interests.

175. The DreamWorks Defendants, Paramount, PDI, and RHF are jointly and severally liable for contributory copyright infringement.

## VI. DAMAGES ON ALL CLAIMS FOR RELIEF

176. Plaintiffs are entitled to and pray for relief on all claims as follows:

177. A permanent injunction, pursuant to 17 U.S.C. § 502, enjoining all Defendants, their officers, agents, employees, licensees, assigns, distributors, sub-distributors, and all persons acting in concert with them, from engaging in such further violations of the Copyright Act;

178. A permanent injunction enjoining all Defendants, their officers, agents, employees, licensees, assigns, distributors, sub-distributors, and all persons acting in concert with them from engaging in or authorizing the production, copying, distribution, and/or exploitation of the *Megamind* movie and/or any product, publication, or depiction of the character Minion;

179. Recovery from each Defendants of the damages, including pre-judgment interest it sustained and will sustain, and any income, gains, profits, and advantages obtained by Defendants as a result of their wrongful acts alleged herein pursuant to 17 U.S.C. § 504(b), in an amount that cannot yet be fully ascertained, but that shall be assessed at the time of trial;

180. Plaintiffs' attorneys' fees and full costs pursuant to 17 U.S.C. § 505; and

181.    For such other and further relief and remedies available under the Copyright Act, 17 U.S.C. §§ 101, *et seq.*, and/or for which the Court may deem just and proper, including punitive damages.

## JURY TRIAL DEMAND

Plaintiffs hereby request a trial by jury on each claim for relief alleged in this Complaint.

Dated: May 17, 2011.

Respectfully submitted,

_____

**D. NEIL SMITH**, Attorney in Charge
STATE BAR NO. 00797450
dneilsmith@mac.com
**ANTHONY BRUSTER**
STATE BAR NO. 24036280
akbruster@me.com
**EDWARD CHIN**
STATE BAR NO. 50511688
edchin@me.com
**NICOLE REED KLIEWER**
STATE BAR NO. 24041759
nicolekliewer@nixlawfirm.com
**ANDREW J. WRIGHT**
STATE BAR NO. 24063927
andrewjwright@me.com
**EDWARD B. CLOUTMAN, IV**
STATE BAR NO. 24074045
edcloutman@nixlawfirm.com

## NIX PATTERSON & ROACH, L.L.P.

5215 N. O'Connor Blvd., Suite 1900
Irving, Texas 75039
972.831.1188 (telephone)
972.444.0716 (facsimile)

**NIX PATTERSON & ROACH, L.L.P.**
205 Linda Drive
Daingerfield, Texas 75638
903.645.7333 (telephone)
903.645.5389 (facsimile)
**DEREK GILLILAND**
STATE BAR NO. 24007239
dgilliland@nixlawfirm.com


**LANGDON★DAVIS**
5902 Summerfield, Ste. A.
Texarkana, TX 75505-5547
Telephone:     (903) 223-3246
Telecopier:     (903) 223-5227
**BRENT M. LANGDON**
Texas Bar No. 11902250
E-Mail: blangdon@ldatty.com
**KYLE B. DAVIS**
Texas Bar No. 24031995
E-Mail:  kdavis@ldatty.com


**ATTORNEYS FOR PLAINTIFFS
ROGUE SATELLITE COMICS,
KEVIN BENNETT ATKINSON
& CHRISTOPHER PHILLIP REILLY**